UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PERFORMANCE CONTRACTORS, INC.

VERSUS

GREAT PLAINS STAINLESS, INC.

CIVIL ACTION

NO. 11-485-JJB

### RULING ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Motions for Partial Summary Judgment filed by Defendant Great Plains Stainless, Inc. ("Great Plains") (Docs. 37 and 46). Both motions are opposed. Oral argument is unnecessary.

I.

This suit arises out of the construction of the Plaquemine VCM Plant ("the Project") in Iberville Parish, Louisiana. Performance Contractors, Inc. ("Performance") entered into contract with Shintech Louisiana LLC ("Shintech") calling for Performance to provide pipe fabrication and installation services for the Project. Performance claims it issued Purchase Order No. 45140011 to Louisiana Chemical Pipe Valve and Fitting, Inc. ("Louisiana Chemical") for piping and fittings for the Project. Louisiana Chemical ordered the piping and fittings from Great Plains. Performance claims that Great Plains manufactured and supplied the fittings, and that numerous fittings were marked "GPSS." Great Plains requested the fittings be inspected prior to their shipment from China to the United States. Performance asserts that the fittings failed to comply with the product specifications found on Great Plains' website, the specifications set forth in the applicable purchase order, and other applicable standards including certain ASME, ASTM, and MSS standards. Performance claims Great Plains refused to replace the fittings. Performance filed this lawsuit asserting claims for redhibition and products liability and seeking

1

damages incurred as a result of the allegedly defective fittings provided by Great Plains. Performance subsequently filed a Supplemental and Amended Complaint (Doc. 29) asserting claims as the assignee of Louisiana Chemical's rights against Great Plains for redhibition, products liability, breach of contract, and bad faith and misrepresentation. All claims in this lawsuit arise under Louisiana law.

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact

issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III.

Great Plains' first Motion for Partial Summary Judgment (Doc. 37) seeks dismissal of Performance's claims on behalf of itself and Louisiana Chemical, which it argues are precluded by a limited liability provision in the sales documentation exchanged between the parties. Great Plains bases its argument on the Louisiana law describing waiver of warranty for redhibitory defects. Great Plains argues that its terms and conditions contain a limitation of liability provision, and that these terms and conditions were contained in every quote, order, acknowledgement, and invoice that it issued to Louisiana Chemical. Great Plains presents evidence that numerous items of sales documentation for the Shintech order were provided to Louisiana Chemical beginning January 19, 2010. Great Plains also presents evidence that it has had a business relationship with Louisiana Chemical for a number years, has filled about fifty orders for Louisiana Chemical in the last five years, and that Great Plains' standard terms and conditions have remained the same throughout the parties' relationship. Great Plains asserts that the limitation of liability provision in question states: "GPS assumes no responsibility for claims of product defects beyond replacement, repair, or refund of payment to be determined solely by GPS."

A "seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520. "[P]arties may agree to an exclusion or limitation of the warranty against redhibitory defects." La. Civ. Code art. 2548. In order to be effective, a waiver of warranty must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and, (3) either be brought to the attention of the buyer or explained to him. *Prince v. Paretti Pontiac*

3

*Company, Inc.*, 281 So. 2d 112, 117 (La. 1973); *Boos v. Benson Jeep-Eagle Co., Inc.*, 98-1424 (La. App. 4 Cir. 6/24/98); 717 So. 2d 661, 663–64; *Ross v. Premier Imports*, 96-2577 (La. App. 1 Cir. 11/7/97); 704 So. 2d 17, 21; *Keaty v. Moss Motors, Inc.*, 93-1452 (La. App. 3 Cir. 6/1/94); 638 So. 2d 684, 687. The seller bears the burden of proving that the buyer waived the warranties. *Boos*, 717 So. 2d at 664; *Pias v. Wiggins*, 96-499 (La. App. 3 Cir. 10/09/96); 688 So. 2d 1103, 1106. "Such waivers are strictly construed against the seller." *Boos*, 717 So. 2d at 664; *Guillory v. Morein Motor Company, Inc.*, 322 So. 2d 375, 378 (La. App. 3 Cir. 1975).

For a waiver's terms to be clear and unambiguous, "the language used must be comprehendible by the average buyer." *Jeffers v. Thorpe*, 95-1731 (La. App. 4 Cir. 1/19/96); 673 So. 2d 202, 205; *Thibodeaux v. Meaux's Auto Sales, Inc.*, 364 So.2d 1370, 1371 (La. App. 3 Cir. 1978). Great Plains argues the one sentence waiver of warranty provision contains clear language to outline Great Plains' limited responsibility for claims of product defects, that it is not responsible for consequential or other special damages that may occur from a product defect. It argues that the provision is short, concise, and devoid of legalese. Performance argues that the provision is silent in regard to redhibition or implied warranties, and that the provision therefore is not clear and unambiguous.[1] Performance cites *LaRoche Industries, Inc., v. Affholder, Inc.*, 1997 U.S. Dist. WL 184834 (E.D. La. 1997), for this proposition. *LaRoche Industries* held that a waiver which was silent as to redhibition or implied warranties, since it did not expressly address redhibition or implied warranties, was not clear and unambiguous as required by Louisiana Civil Code article 2548. *Id.* at *3. It distinguished such silence from the circumstances of certain

---

[1] Performance also argues that the waiver of warranty provision is not clear and unambiguous based on certain factors that it argues are applicable to this determination under Louisiana law: whether the clause (1) is set apart from other language, (2) has a distinguishing heading, (3) contains bold face or upper case print, and (4) is located near the buyer's signature. The law, however, does not provide that these factors be considered when determining whether a waiver of liability is clear and unambiguous.

Louisiana cases which enforced a waiver or limitation of implied warranties, noting that the contracts in those cases specifically addressed implied warranties. *Id.* at *2; *Louisiana National Leasing Corp. v. ADF Serv., Inc., et al*, 377 So. 2d 92, 95 (La. 1979); *FMC Corp. v. Continental Grain Co.*, 355 So. 2d 953, 956 (La. App. 4 Cir. 1977).

The Court finds *LaRoche* applicable to the case at hand. As in *LaRoche*, Great Plains' limitation of liability provision is silent as to redhibition and implied warranties. Accordingly, the provision is not clear and unambiguous as required by law. The Court therefore does not reach the other elements of an effective limitation of liability. As Great Plains cannot prove that the provision is clear and unambiguous, it fails to carry its burden for proving that the limitation of liability provision is effective against Performance as required by the law addressing waiver of warranty for redhibitory defects.

IV.

Great Plains' second Motion for Partial Summary Judgment (Doc. 46) moves for summary judgment dismissing Plaintiff's Louisiana Products Liability Act ("LPLA") and bad faith seller redhibition claims which are based on Great Plains' status as the apparent manufacturer of the subject piping and fittings. Great Plains argues that it cannot be the "manufacturer" as that term is defined by applicable industry standards and an agreed definition. This argument is split into three parts: (1) that Great Plains is not a manufacturer according to the industry standards; (2) that the apparent manufacturer doctrine does not apply; and (3) that Performance can provide no evidence that Great Plains can be considered a manufacturer under the "alter ego" definition of "manufacturer."

The Court first addresses Great Plains' argument that it is not a manufacturer according to the ASTM standards, some of the standards applicable to the products that the form the basis

5

of this lawsuit. Great Plains claims Performance agreed these standards would apply to the products in question, and accordingly, these standards apply to determine the definition of manufacturer. Performance claims that it did not agree to the ASTM definition of manufacturer. Great Plains has not carried its burden in asserting that it is not a manufacturer under the ASTM standards. Further, Great Plains fails to adequately explain how the ASTM standards and the ASTM definition of manufacturer affect Performance's claims that Great Plains is a manufacturer under Louisiana law.

The Court next addresses Great Plains' argument that the apparent manufacturer doctrine does not apply. The LPLA provides remedies against the manufacturer for claimants harmed by an unreasonably dangerous product. La. Rev. Stat. § 9:2800.54(A). Louisiana redhibition law provides remedies against a manufacturer for defects or vices in a thing sold. La. Civ. Code art. 2520; *Chastant v. SBS-Harolyn Park Venture*, 510 So. 2d 1341, 1344 (La. App. 3 Cir. 1987). However, one does not need to be the actual manufacturer to be considered a manufacturer under the LPLA or Louisiana redhibition law. *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010); *Chastant*, 510 So. 2d at 1344. It may be the apparent manufacturer, which is defined as "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." La. Rev. Stat. 9:2800.53(1)(d). Louisiana cases "demonstrate that when the distributor's actions give the buying public a basis to assume that it may be the manufacturer of a product it distributes, a jury will usually be within its province to conclude that the distributor held itself out as the product's manufacturer." *Chevron*, 604 F.3d at 897.

Great Plains claims that Performance knew Great Plains was not the manufacturer, and that this keeps the apparent manufacturer doctrine from applying. Great Plains supports this

assertion by pointing to the deposition of Jerome Mabile, Performance's appointed corporate representative, who affirmed that Performance was aware that the items supplied by Great Plains to Louisiana Chemical and then to Performance were manufactured by entities other than Great Plains. Performance responds that Great Plains' assertion is "stretching the truth," and this testimony by Mr. Mabile only refers to his personal knowledge. Performance's assertion is unmistakably meritless. The law is clear that as Performance's corporate representative, Mr. Mabile spoke for Performance. Fed. R. Civ. P. 30(b)(6); *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

This Court, in *Ayo v. Honeywell Intern., Inc.*, No. 06-688, 2010 U.S. Dist. WL 4117726, at *5 (M.D. La. Oct. 13, 2010), recently addressed the apparent manufacturer doctrine as it related to a buyer who had knowledge that the seller was not the manufacturer. *Ayo* involved a products liability claim by the plaintiff against the distributor of an allegedly defective chlorine transfer hose, which ruptured. Citing the Fifth Circuit in *Chevron*, *Ayo* held that "Plaintiffs have failed to set forth the evidence from which a reasonable fact-finder could conclude that Defendant either held the hose out as its own, gave the customers a basis to assume that Defendant may be the manufacturer of the product it distributed, or that Defendant had a reputation as a manufacturer of the hose." In reaching this conclusion, the court focused on the fact that the purchaser's reliability engineer knew the identity of the actual manufacturer of the hose and knew that the Defendant distributor was not the manufacturer.

As in *Ayo*, Performance knew that Great Plains was not the manufacturer of the items Great Plains supplied to it. This evidence precludes a reasonable fact-finder from concluding that Great Plains held the items out as its own. Since Performance knew Great Plains was not the manufacturer, no reasonable juror could find that Great Plains' actions gave Performance "a

basis to assume that it may be the manufacturer." *Chevron*, 604 F.3d at 897. Therefore, with regard to Performance's claims on behalf of itself, Great Plains is not the apparent manufacturer of the products in question.

Regarding Great Plains' assertion that Louisiana Chemical also had knowledge that Great Plains was not a distributor, the evidence Great Plains presents does not establish this. Therefore, we look to a series of factors to determine whether Great Plains is not a manufacturer as a matter of law with regard to Performance's claims brought as Louisiana Chemical's assignee. The factors for whether Great Plains labeled the product as its own include: 1) the actual wording of the label; 2) whether the company in the label was a well-known manufacturer of the product; 3) whether the product bears the actual manufacturer's mark; 4) whether the seller is the entity that labeled the product; and 5) whether the label denotes ownership of the product. *Chevron*, 604 F.3d at 896; *Allstate Ins. Co. v. Fred's Inc.*, 44,508 (La. App. 2 Cir. 3/17/10); 33 So. 3d 976, 984–85; *Louviere v. Ace Hardware Corp.*, 2005-259 (La. App. 3 Cir. 11/2/05); 915 So. 2d 999, 1002; *Peterson v. G.H. Bass and Co., Inc.*, 1997-2843 (La. App. 4 Cir. 5/20/98); 713 So. 2d 806, 808; *Penn v. Inferno Mfg. Corp.*, 199 So. 2d 210, 217 (La. App. 1 Cir. 1967). Labels both on the products themselves and on their packaging are taken into consideration. Additionally, courts recognize that to be an apparent manufacturer, an entity must have some level of control over the properties of the products. *Parks ex rel. Parks v. Baby Fair Imports, Inc.*, 726 So. 2d 62 (5th Cir. 1998); see also *Penn*, 199 So. 2d at 218 (stating the seller of a product must be considered as a party to the manufacturing process as the product was made using the seller's equipment). Aside from product labeling, Louisiana courts have considered whether the product itself left the consumers with the impression that the seller was the manufacturer, product marketing, product guarantees, and whether the seller had a reputation as

a manufacturer in its market. *Peterson*, 713 So. 2d at 808; *Landry v. State Farm Fire & Cas. Co.*, 504 So. 2d 171, 173-74 (La. App. 3 Cir. 1987); *Penn*, 199 So. 2d at 217. "It takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark." *Chevron*, 604 F.3d at 896.

Great Plains presents evidence that the "GPSS" mark on the body of the product is insufficient to put any consumer on notice that Great Plains intended to be known as the manufacturer, that the mark was placed for tracing purposes and to avoid confusion with the actual manufacturer, and that it did not personally mark the products. It further argues that the label was merely initials and not a trademark or logo, Great Plains is not a well known manufacturer of the subject pipe and fittings but is instead a well known distributor, and the initials do not denote ownership. It presents evidence that it exhibits no control over the manufacture, design, or composition of the fittings, and that it could only require the products meet ASTM standards. It presents evidence that it is not the exclusive representative of the manufacturer and it did not market the products as its own. Great Plains finally presents evidence that it did not certify the quality of any product, which is the purpose of Material Test Reports.

Performance presents evidence to show that Great Plains labeled the products as its own and held itself out to be the manufacturer by deliberately stenciling "GPSS" on the products and by making no effort to notify Performance or Louisiana Chemical that it was merely serving as a vendor. It presents evidence that the products did not contain the markings of Zhejiang JNDIA, the purported actual manufacturer of the products. It argues that knowingly requesting that the fittings be marked "GPSS" means they were labeled as Great Plains' own fittings. Performance further argues that section 16 of ASTM A815 – 09a, which it claims is applicable to the instant

case, requires that all fittings have the manufacturer's name or trademark "suitably marked on each fitting." Note 2 of section 16 of ASTM A815 – 09a provides that, "[f]or purposes of identification marking, the manufacturer is considered the organization that certifies that the piping complies with this specification." Performance asserts that by providing products in response to a purchase order that required compliance with ASTM 815 and by marking such products with its own initials, Great Plains certified that the fittings complied with the applicable specification, so it is the manufacturer. Performance also argues that Great Plains certified the fittings by having a third-party inspect the fittings.

Performance points to two cases for comparison to show that a genuine issue of material fact exists here. The Court of Appeal of Louisiana, Third Circuit, in *Laughlin v. Kulkoni, Inc.*, 93-1613 (La. App. 3 Cir. 9/14/94); 643 So. 2d 206, 207–08, considered a claim by drilling rig worker against the supplier of an allegedly defective wire rope. The worker argued the supplier occupied the position of manufacturer, since it did not disclose the identity of its manufacturers and suppliers, only the supplier's name appeared in its catalog, the supplier required the alleged actual manufacturer to comply with United States manufacturing regulations, the supplier required test certificates from the manufacturer but re-issued them after replacing the actual manufacturer's name with its name, and it occasionally conducted independent tests on the wire rope although it had no duty to do so. *Id.* at 210. The supplier responded that it did not identify the rope with its trade name or logo, the only identifying marks were that of the manufacturer, and that it only required manufacturers to meet U.S. government requirements. *Id. Laughlin* held the issue to be a factual one, genuinely disputed by the parties. *Id.*

The Western District of Louisiana, in *Justiss Oil Co., Inc. v. T3 Energy Services, Inc.*, 2011 WL 539135, at *1 (W.D. La. Feb. 7, 2011), addressed a products liability claim by an oil

well owner and operator against the seller of an allegedly defective well head component. It held that the evidence of the seller putting its name and logo on the product's packaging and mailing labels, with no branding on the product itself, and no other indication that another entity was the manufacturer, was insufficient to establish the seller as the apparent manufacturer. *Id.* at 2. Rather, such evidence created a genuine issue of fact. *Id.*

The Court agrees that as in *Laughlin* and *Justiss Oil Co.*, a genuine issue of fact exists as to whether Great Plains is an apparent manufacturer in regard to Performance's claims as Louisiana Chemical's assignee. As stated by the Fifth Circuit, "[t]t takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark." *Chevron*, 604 F.3d at 896. For purposes of this Motion, the evidence shows that fittings in this case did not bear the alleged actual manufacturer's mark. Further the industry standards that the parties agreed would apply to the fittings provide that that all fittings shall have the manufacturer's name or trademark "suitably marked on each fitting." ASTM A815 – 09a section 16. The fittings bore the mark of Great Plains. The Court finds this sufficient to create a fact issue as to whether Great Plains labeled the fittings as its own or otherwise held itself out to be the manufacturer of the fittings.

The Court next addresses Great Plains' argument that Performance can provide no evidence that Great Plains can be considered a manufacturer under the "alter ego" definition of manufacturer in the LPLA. Great Plains argues that accordingly, under this definition, it is not a manufacturer as a matter of law. The Definitions section of the LPLA provides in pertinent part:

(1) "Manufacturer" also means:

(d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the

11

alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. Rev. Stat. 9:2800.53(1)(d).

Performance fails to present evidence or argument that any of the statute's defined factors apply to Great Plains or its relationship with Zhejiang Jndia. Despite this, Performance argues that the relevant holding in *Andry v. Murphy Oil, U.S.A., Inc.*, (La. App. 4 Cir. 6/14/06); 935 So. 2d 239, is sufficient authority to allow for Great Plains to be considered a manufacturer as Zhejiang Jndia's alter ego. *Andry* held that a seller who imported valves, placed a label on them, and sold them as its own, was the alter ego of an alien manufacturer under the LPLA. *Andry* did not specifically address the factors the statute requires for consideration.

Great Plains argues that an earlier Louisiana Fourth Circuit opinion, *Matthews v. Wal-Mart Stores, Inc.*, 97-0449 (La. App. 4 Cir. 3/11/98); 708 So. 2d 1248, is more relevant precedent for this case. *Matthews* involved a product defect suit against Wal-Mart, the seller of a lamp solely labeled with a sticker stating "Made in China." *Id.* at 1248–49. *Matthews* held that the plaintiff, who presented no evidence or inference of any of the defined alter ego factors,

could not "bring herself within the ambit of the protection afforded by the LPLA" as the alter ego of an alien manufacturer. *Id.* at 1249.

The Court agrees with Great Plains that the holding in *Matthews* is more applicable to the case at hand. Performance has failed to present evidence or even argument that Great Plains and Zhejiang Jndia had common ownership or control, that Great Plains assumed or administered product warranties obligations of Zhejiang Jndia, or that Great Plains prepared or modified Zhejiang Jndia's products for distribution. Accordingly, no reasonable juror could find that Great Plains is a manufacturer as Zhejiang Jndia's alter ego. As a matter of law, Great Plains is therefore not a manufacturer under the alter ego definition. To find otherwise, despite the fact that no evidence has been provided of any of the statute's stated factors, would be in contravention of the statute.

V.

Accordingly, Great Plains' Motion for Partial Summary Judgment (Doc. 37) is **DENIED**. Great Plains' Motion for Partial Summary Judgment (Doc. 46) is **GRANTED IN PART**, as Great Plains cannot be a manufacturer in regard to Performance's claims or under the "alter ego" definition of manufacturer in the LPLA, and **DENIED IN PART**, as a genuine issue of material fact exists as to whether Great Plains is a manufacturer in regard to the claims Performance brings as Louisiana Chemical's assignee.

Signed in Baton Rouge, Louisiana, on November 2, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE**